# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32513**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jacquan E. HUNT**
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 October 2019

————————————

*Military Judge:* Mark F. Rosenow.

*Approved sentence:* Bad-conduct discharge and reduction to E-1. Sentence adjudged 13 December 2017 by SpCM convened at Holloman Air Force Base, New Mexico.

*For Appellant:* Lieutenant Colonel Anthony D. Ortiz, USAF; Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and D. JOHNSON, *Appellate Military Judges*.

Senior Judge MINK delivered the opinion of the court, in which Judge KEY and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MINK, Senior Judge:

Appellant was found guilty by a military judge, in accordance with his pleas, of two specifications of wrongful use of a controlled substance (marijuana and Methylenedioxy-Amphetamine) both on divers occasions in violation of

Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] A panel of officer members sentenced Appellant to a bad-conduct discharge and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises three issues on appeal: (1) whether Appellant's plea to divers use of Methylenedioxy-Amphetamine (MDA)[2] is improvident because the military judge did not elicit sufficient facts to establish that Appellant was aware that the pills he was ingesting were a controlled or contraband substance prior to their ingestion, or in the alternative, that Appellant's use of MDA should be deemed one continuous transaction rather than divers use; (2) whether the military judge erred when he admitted a letter of reprimand (LOR) as sentencing evidence when Appellant's commander admitted that one of the main purposes for its issuance was for general deterrence purposes for the squadron; and (3) whether trial defense counsel was ineffective when he requested that the convening authority set aside Appellant's bad-conduct discharge, which was beyond the convening authority's power under Article 60, UCMJ, 10 U.S.C. § 860, or in the alternative, whether an error in the staff judge advocate's recommendation (SJAR) regarding the maximum punishment and the failure of the SJAR addendum to address trial defense counsel's error in the clemency request requires new post-trial processing.[3] We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

On 2 September 2017, during the Labor Day holiday weekend, Appellant attended an off-base party with civilian friends in Las Cruces, New Mexico. While walking around in the house where the party was occurring, Appellant was offered a "hookah," which Appellant described to the military judge as a

---

[1] All references in this opinion to the Uniform Code of Military Justice, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] MDA is also known as 3, 4-methylenedioxyamphetamine. At various times in the record of trial, the terms "Methylenedioxy-Amphetamine," "MDA," and "3, 4-methylenedioxyamphetamine" are used to refer to the illegal substance consumed by Appellant. Appellant also referred to MDA as "molly" even though that term is generally used to refer to 3, 4-menthylenedioxymethamphetamine or MDMA, which was described by the Government's expert witness as a "sister drug" to MDA. Both MDA and MDMA are Schedule I controlled substances. The record is clear that Appellant pleaded guilty to and was found guilty of the wrongful use of MDA.

[3] Although Appellant raises the post-trial processing errors "in the alternative" to his assertion of ineffective assistance of counsel, for clarity we address these issues separately below.

device from which tobacco or other substances could be smoked. Appellant began to smoke from the hookah and discovered it contained marijuana. Appellant then chose to continue to smoke from the hookah. Approximately one hour later, while still at the party, Appellant was approached by a civilian male that he did not know. The individual gave Appellant two round white pills, which Appellant accepted. Appellant stated that although he did not know specifically what the pills were before he used either of them, he "knew it was an illegal substance." He took one of the pills shortly after midnight and took the second pill approximately thirty minutes later. He subsequently learned that both of the pills were MDA.

Approximately two weeks later, on or about 16 September 2017, while attending another party in Las Cruces, Appellant smoked marijuana in the form of a joint he was provided by someone at the party.

## II. DISCUSSION

### A. Appellant's Conviction for Divers Use of MDA

Appellant asks us to set aside his conviction for wrongful use of MDA on divers occasions. Appellant asserts his guilty plea was improvident as a result of the military judge's failure to elicit a sufficient factual basis to establish Appellant was aware that the pills he ingested were a controlled or contraband substance prior to his ingesting each of them. Appellant argues that a substantial basis exists to question the providence of his guilty plea and that, as a result, the military judge abused his discretion in accepting his plea. Alternatively, Appellant argues that his use of MDA should be considered a continuous, rather than divers use. We disagree and find that Appellant entered a provident plea to divers use, and the military judge did not abuse his discretion by accepting it.

#### 1. Additional Background

Appellant pleaded guilty to the wrongful use of MDA on divers occasions. During the providence inquiry, the military judge explained the elements and definitions of the offense of wrongful use of a controlled substance to Appellant and then asked Appellant a number of specific questions to determine whether to accept his plea of guilty. The military judge defined "use" of a controlled substance and the circumstances that make the use of a controlled substance "wrongful." The military judge advised Appellant that use of the controlled substance must be "knowing and conscious" and that "divers occasions" meant "on more than one occasion." The military judge also told Appellant that knowledge of the exact identity of the contraband substance is not required, only that Appellant knew the substance was prohibited.

The military judge then asked Appellant to explain why he was guilty of the wrongful use of MDA on divers occasions. Appellant stated that after he smoked marijuana from the hookah, he was walking around at the party and a civilian male that he did not know offered him two white circular pills, which he accepted. Appellant stated that he "didn't know what the pill was, but [he] knew it was an illegal substance." Appellant stated he swallowed the first pill shortly after midnight, and that his "body felt weird," he "couldn't stand still," and his "body was shaking." Appellant stated that approximately thirty minutes later, after the effects of the first pill had worn off, he swallowed the second pill and experienced effects similar to those he had after taking the first pill.

The military judge then questioned Appellant specifically about the circumstances of his use of MDA. Appellant explained that the effects of the marijuana he had smoked earlier from the hookah had mostly dissipated by the time he was given the pills. Appellant stated that he believed the pills were contraband based on the setting of the party and due to fact that he knew that no one just gives away medication at a party. Appellant explained that even though he did not learn what the pills were until after he had taken them, he knew that they were illegal before he did so. Appellant stated he later heard others at the party discussing the use of MDA or MDMA, and the results from his urinalysis test a few days later confirmed that the substance he used was MDA.

### 2. Law and Analysis

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citations omitted). In discharging this duty, we review whether the record before us contains a substantial basis in law and fact to question the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). Appellant argues that he did not establish a sufficient factual basis for the acceptance of his guilty plea, and the military judge had a duty to inquire further before accepting Appellant's plea. We disagree.

When reviewing a military judge's acceptance of a guilty plea, we determine "the factual circumstances admitted by the accused which 'objectively' support his plea." *United States v. Shearer*, 44 M.J. 330, 334 (C.A.A.F. 1996) (quoting *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A. 1994)). Here, Appellant himself provided the factual basis upon which to accept his plea when he admitted that he knew the pills were an illegal or contraband substance before he used either one. Contrary to Appellant's assertion that he did not sufficiently indicate that he knew the pills were contraband or a controlled substance at the time he ingested either pill, Appellant told the military judge why he believed the pills were contraband, to include the setting of the party and

the fact that it was not common for individuals to hand out medication at a party. In addition, earlier at the party Appellant had smoked marijuana provided to him at no charge.

Under these circumstances, it was clearly reasonable for Appellant to understand illegal drug use was occurring at the party. It is also clear that the military judge asked the question and Appellant provided more than just a conclusory answer as to why he believed the pills were contraband. By Appellant's own admission, he knew the pills were illegal or contraband before he used them. We find no substantial basis upon which to question Appellant's plea. Therefore, we find the plea provident and find that the military judge did not abuse his discretion in accepting Appellant's guilty plea.

Appellant next argues, in the alternative, that he was not guilty of divers use of MDA but instead his use was a "continuous course of conduct." We are not persuaded. In order to determine whether Appellant's uses were separate or constituted a continuous course of conduct, we consider "factors such as time, distance, and the subject of the offenses." *United States v. Jobes*, 20 M.J. 506, 508 (A.F.C.M.R. 1985). Appellant pleaded guilty and admitted to two separate uses of MDA. Appellant explained to the military judge that he consumed a second pill approximately thirty minutes after he consumed the first pill and after the effects of the first pill had worn off. Appellant specifically admitted that he could have chosen not to use the second pill, but did so anyway because he wanted to experience the effects of the first pill again. We find Appellant's two uses of MDA were separate criminal acts and not a continuous course of conduct. Accordingly, we again conclude that Appellant's plea to divers use of MDA was provident.

## B. Admission of the LOR

Appellant asserts that the military judge erred by admitting a LOR, dated 5 December 2017, into evidence because Appellant's commander admitted that one of the reasons he issued the LOR was for "general deterrence purposes of the squadron." We disagree that the military judge erred.

### 1. Additional Background

The trial in this case was originally scheduled to begin on 11 December 2017. Nine days prior to the scheduled start of his court-martial, on 2 December 2017, Appellant was the passenger in a vehicle stopped by security forces at the main gate of Holloman Air Force Base. Appellant was apprehended after a search of the vehicle by security forces personnel resulted in the discovery of marijuana. In addition, one of the individuals in the vehicle with Appellant was another Airman with whom Appellant had been ordered to have no contact. Three days later, on 5 December 2017, Appellant's commander issued Appellant a LOR addressing Appellant's presence in the vehicle where marijuana

was found as well as Appellant's violation of the no contact order. In his response to the LOR, Appellant explained he needed a ride back to base and his only option was to ride with the Airman with whom he was to have no contact. Appellant also apologized for his actions.

During the trial, the Government sought to introduce the LOR in the presentencing case. The Defense objected on the basis that the LOR was issued for an improper purpose and that the LOR should be excluded in accordance with Military Rule of Evidence (Mil. R. Evid.) 403. The Defense argued that a LOR is a rehabilitative tool to be used for improvement, correction, and instruction of subordinates. The Defense asserted that in this case Appellant's squadron commander imposed the LOR, not for the purpose of rehabilitating Appellant, but for good order and discipline in the squadron. Appellant's commander testified one of the reasons that he issued the LOR was for "good order and discipline," but he also testified that this gave him "another opportunity . . . to have a conversation with [Appellant] and discuss his future . . . and the things [he] need[ed] to improve on." The military judge admitted the LOR over the Defense's objection.

### 2. Law and Analysis

This court reviews a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *Id.* (citation omitted).

Under Rule for Courts-Martial (R.C.M.) 1001(b)(2), "evidence of any disciplinary actions" are potentially admissible at sentencing. "If the accused objects to a particular document . . . as containing matter that is not admissible under the Military Rules of Evidence, the matter shall be determined by the military judge." *Id.*; *see also* Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 7.18 (8 Dec. 2017) (addressing the admissibility of a LOR).

Departmental regulation outlines the authority for and purpose of LORs. "Commanders . . . can issue administrative . . . reprimands. These actions are intended to improve, correct, and instruct subordinates who depart from standards of performance, conduct, bearing, and integrity, on or off duty, and whose actions degrade the individual and unit's mission." AFI 36-2907, *Unfavorable Information File (UIF) Program*, ¶ 4.1 (26 Nov. 2014).

In order to be admissible as sentencing evidence, a LOR must perform a legitimate "corrective" or "management tool" purpose, and cannot merely have been issued to ensure the underlying misconduct addressed in the LOR is considered by the sentencing authority at trial. *United States v. Williams*, 27 M.J.

529, 530 (C.M.R. 1988) (citation omitted). The focus is on the intent of the issuing commander; specifically, "whether a commander employed a [LOR] with the primary purpose of addressing the misconduct and not in order to influence the court-martial." *United States v. Raschke*, No. ACM S32364, 2017 CCA LEXIS 218, at *6 (A.F. Ct. Crim. App. 24 Mar. 2017) (unpub. op.) (citation omitted).

A military judge "may exclude relevant evidence if its probative value is substantially outweighed by a danger of," *inter alia,* "unfair prejudice, confusing the issues, [or] misleading the members." Mil. R. Evid. 403. Sentencing evidence, like all other evidence, is subject to the balancing test of Mil. R. Evid. 403. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citation omitted). A military judge enjoys "wide discretion" in applying Mil. R. Evid. 403. *Id.* (citation omitted). When a military judge conducts a proper balancing test under Mil. R. Evid. 403, the ruling will not be overturned unless there is a "clear abuse of discretion." *Id.* (citation omitted). A military judge abuses his discretion when (1) the findings of fact upon which he bases his ruling are not supported by the evidence of record; (2) he uses incorrect legal principles; or (3) his application of the correct legal principles to the facts is clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Relying on the testimony of Appellant's squadron commander, the Defense essentially argued at trial that the commander issuing the LOR had no intention to rehabilitate Appellant. The Defense argued instead that the commander issued the LOR because he was concerned about good order and discipline in the squadron and wanted to send the message to the other members of the squadron that disciplinary action had been taken against Appellant. Concomitantly, Appellant contended that the admission of a LOR issued for such a purpose was improper. Implicit in the Defense's argument was that the LOR was being issued immediately preceding Appellant's court-martial to bolster the Government's sentencing case. The Defense's objection focused on the reason for issuing the LOR, not the inherent validity of the LOR for addressing the underlying misconduct committed by Appellant.

In a detailed oral ruling, the military judge discussed the evidence he considered regarding the issuance of the LOR as well as the applicable case law. The military judge noted that military members facing trial by court-martial are not exempt from disciplinary action and that a reprimand issued within days before a court-martial can still serve a rehabilitative purpose. Based on the testimony of Appellant's commander, the military judge stated that he had no concern that the LOR was issued for an improper purpose, such as increasing the punishment Appellant might receive at the court-martial. To the contrary, the military judge ruled that the preponderance of the evidence established that

Appellant's commander issued the LOR with the intent "consistent with his responsibilities as a commander to maintain good order and discipline, and to do so through intervention with [Appellant]." In his ruling, the military judge also discussed his application of the balancing test under Mil. R. Evid. 403, concluding that the probative value of the LOR was "relatively high" and not outweighed by the risk of unfair prejudice, confusion of the members, cumulative with other evidence, or a waste of time.

We find that the military judge's findings of fact are fully supported by the record and that the military judge applied the correct legal principles to the facts of this case. We also find that the military judge correctly applied the Mil. R. Evid. 403 balancing test. Accordingly, we conclude that the military judge did not abuse his discretion in admitting the LOR over the Defense's objection that the LOR was created for an improper purpose or that it should be excluded under Mil. R. Evid. 403.

Even assuming *arguendo* that the admission of the LOR was error in this case, we are convinced that any error was harmless and would not have had a substantial influence on the sentence. *See United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018). At the time of his court-martial, Appellant had been on active duty in the Air Force for one year and five months. The sentencing evidence available for consideration by the court members included Appellant's conviction for multiple uses of two different illegal substances as well as previous administrative and disciplinary actions, including a letter of counseling for being late to work repeatedly, a LOR for failing to report for duty on multiple occasions, and nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, for drunk driving and underage drinking. We find that the LOR addressing Appellant's misconduct on 2 December 2017 did not have a substantial influence on the sentence adjudged by the court-members.

## C. Ineffective Assistance of Counsel

Appellant asserts that he received ineffective assistance of counsel during the post-trial processing of his case because his trial defense counsel (1) requested the convening authority set aside the bad-conduct discharge even though the convening authority had no power to do so, and (2) failed to properly advise Appellant on what to seek in clemency. Appellant submitted no affidavit or declaration in support of this allegation. Under the facts of this case, and due to the absence of a colorable showing of possible prejudice, we find that the claim of ineffective assistance of counsel must fail.

### 1. Additional Background

The National Defense Authorization Act (NDAA) for Fiscal Year 2014 modified Article 60, UCMJ, and limited the convening authority's ability to grant clemency. Pub. L. No. 113–66, sec. 1702, § 860(c)(4)(A), 127 Stat. 672, 954–58

(2013). The effective date of the change was 24 June 2014. *Id.* at 958. Thus, at the time of Appellant's offenses and trial, the pertinent text of the modified Article 60, UCMJ, read, "the convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge." 10 U.S.C. § 860(c)(4)(A).

In the SJAR, the staff judge advocate (SJA) correctly advised the convening authority that he did not have the "authority to disapprove, commute or suspend in whole or in part the bad conduct discharge" adjudged in Appellant's case. The SJA also correctly advised the convening authority that he did have the authority to "disapprove, commute or suspend in whole or in part the reduction in rank."[4]

However, in his clemency submission on behalf of Appellant, trial defense counsel, Captain (Capt) AT, submitted a letter to the convening authority that incorrectly stated that Article 60, UCMJ, empowered the convening authority to "approve, disapprove, commute, or suspend the sentence of a court-martial in whole or in part." Trial defense counsel then stated that Appellant was requesting that the convening authority disapprove the adjudged bad-conduct discharge and only approve the reduction to E-1. Attached to the trial defense counsel's letter was a letter from Appellant, in which he asked the convening authority to "grant me clemency by upgrading my bad conduct discharge (BCD) to an administrative or general discharge." Appellant then describes the impact the punitive discharge will have on his life, apologizes for his actions, and again asks the convening authority to "disapprove my BCD so that I can separate administratively . . . ."

At the Government's request, this court ordered and received from Capt AT a declaration responsive to Appellant's claim of ineffective assistance. In his uncontroverted declaration, Capt AT stated that he was aware of the significant limitations on the convening authority's clemency power, and he advised Appellant that the convening authority "essentially had no other option than the approval of the punitive discharge." While discussing the preparation of his clemency submission with Appellant in March 2018, Capt AT told Appellant that he had discussed with the legal office the possibility that Appellant might be granted immunity to testify in another court-martial and, that under

---

[4] Appellant does not assert that the SJAR error regarding the maximum punishment addressed in Section D below contributed to or constituted ineffective assistance of counsel. As a result, we consider the issue of SJAR error waived as it relates to the claim of ineffective assistance of counsel.

"extreme circumstances" and upon the recommendation of the trial counsel in that case based on substantial assistance to the Government, the convening authority could grant greater relief such as disapproval of the punitive discharge, referring to the provisions of R.C.M. 1107(d)(1)(C). Capt AT stated that he then advised Appellant again that this was not a "likely option for the convening authority at the time because no immunity had been granted and there was no certainty immunity would be granted."[5]

Capt AT stated he advised Appellant that it was "more prudent" to request disapproval of the reduction in grade rather than disapproval of the punitive discharge. Capt AT stated that it was still Appellant's desire to request disapproval of the punitive discharge even in light of this advice. Capt AT stated he then prepared his letter in support of Appellant's clemency request. He stated that his rationale for requesting relief he knew was not within convening authority's power was two-fold:

> . . . First, I believed that if I did not tell the convening authority that he had the ability to disapprove the punitive discharge, then such statement could in a way constitute constructive waiver of disapproval of the discharge if the trial counsel had later made a recommendation in light of the investigative/prosecutorial assistance of [Appellant] under immunity. Second, I did not lay out all conditions of the immunity request because such grant had not yet been given. My client's wishes were to request disapproval of the discharge. I was confident that he understood the risks associated with that request and I echoed that request in my response. Writing as an advocate and with the understanding that [Appellant] wanted to request disapproval of the discharge, despite my advice, I believed my words were prudent to meet my client's interests under the unique circumstances.

In the addendum to the SJAR, the SJA failed to address trial defense counsel's erroneous statement of the law. The SJA recommended and the convening authority approved the sentence as adjudged. In response to this allegation of error, the Government submitted a declaration from the convening authority, who stated that "[w]hile the Addendum to the SJAR did not correct defense

---

[5] Capt AT also indicated that Appellant was granted immunity to testify against another Airman on 8 May 2018 and assisted in the investigation of that Airman. However, Capt AT does not state that the trial counsel in that case ever made a recommendation on behalf of Appellant for substantial assistance.

counsel's misstatement of my authority in clemency, I would not have changed the adjudged sentence even if the Addendum to the SJAR addressed the error."

### 2. Law and Analysis

The Sixth Amendment[6] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch*, 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). Given "the highly discretionary nature of the convening authority's clemency power, the threshold for showing prejudice is low." *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999). However, an appellant must "make some colorable showing of possible prejudice." *Id.* (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

Appellant contends Capt AT failed to provide him effective assistance of counsel during post-trial processing by misinterpreting the law regarding the convening authority's clemency power and asking the convening authority to disapprove the bad-conduct discharge, which he had no power to do. As noted

---

[6] U.S. CONST. amend. VI.

above, this court ordered and received from Capt AT a declaration responsive to Appellant's claim of ineffective assistance. Because the declaration of Capt AT does not raise any factual disputes, we find no post-trial evidentiary hearing is required to resolve this assignment of error. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam).

We find Capt AT's explanation of his rationale for requesting relief he knew was not within convening authority's power to grant very troubling, and we disagree that the words of his clemency submission to the convening authority in which he misstated the law were "prudent." While Appellant may have wanted to request disapproval of the punitive discharge contrary to Capt AT's advice and the possibility of receiving some sort of trial counsel recommendation for assistance in the other investigation may have been viable at the time of the clemency submission, Capt AT's intentional misstatement of the law and his failure to explain the basis upon which he was attempting to prevent any "constructive waiver" in his letter to the convening authority defies logic. Consequently, we conclude that Appellant has demonstrated the first two elements of the three-pronged test for ineffective assistance articulated in *Gooch*, 69 M.J. at 362: (1) there was not a reasonable explanation for trial defense counsel's decision to misstate the law in his clemency request to the convening authority and (2) that in doing so, his advocacy did fall below the performance expected of competent defense counsel.

Nevertheless, Appellant's claim of ineffective assistance must fail because Appellant has not demonstrated any prejudice as required by the third element of the *Gooch* test. The convening authority received correct advice in the SJAR as to his power in clemency. As noted above, in his declaration the convening authority stated that even if the SJAR addendum had addressed the error in Appellant's clemency submission, he would have still approved the adjudged sentence. The convening authority stated:

> While the Addendum to the SJAR did not correct defense counsel's misstatement of my authority in clemency, I would not have changed the adjudged sentence even if the Addendum had addressed the error. Having now been informed of the misstatement of my authority in the clemency request, I stand by my original decision. The sentence [Appellant] received was consistent with the charge and specifications of which he was convicted. Additionally, I believed then, and still believe today, that there were no mitigating circumstances presented in his clemency request that supported a lesser sentence.

As a result, there is no reasonable probability of a more favorable result had trial defense counsel correctly stated the law when the only other clemency that the convening authority could have granted was disapproval of the reduction in rank, in light of the convening authority's declaration. *See Gooch*, 69 M.J. at 362 (citation omitted). Therefore, we find Appellant has failed to demonstrate prejudice. *See Datavs*, 71 M.J. at 424 (citation omitted).

## D. Error in the SJAR and SJAR Addendum

In the alternative to the claim of ineffective assistance of counsel, Appellant asserts that he is entitled to new post-trial processing because the SJAR incorrectly stated the maximum punishment available in Appellant's case and because the SJAR addendum failed to correct the trial defense counsel's erroneous statement regarding the convening authority's power to set aside the bad-conduct discharge. We disagree.

### 1. Additional Background

In the SJAR, the SJA advised the convening authority that the maximum punishment in Appellant's case was "reduction to E-1, confinement for 12 months, forfeiture of two-thirds pay per month, and a bad conduct discharge." This statement contained an error because the jurisdictional limit of a special court-martial could have been adjudged in this case. As a result, the actual amount of forfeitures that could have been imposed by the court-martial included the forfeiture of two-thirds pay per month *for up to 12 months*. Article 19, UCMJ, 10 U.S.C. § 819. The Defense clemency submission failed to address this error. In the SJAR addendum, the SJA neither corrected the error in the maximum punishment nor addressed the trial defense counsel's erroneous statement regarding the convening authority's clemency power.

### 2. Law and Analysis

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). "Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error." *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (citing R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). To prevail under a plain error analysis, an appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Scalo*, 60 M.J. at 436). Even in the context of plain error analysis, the threshold for establishing prejudice from errors impacting an appellant's request for clemency from the convening authority is low, but there must be "some 'colorable showing of possible prejudice.'" *Id.* (quoting *Scalo*, 60 M.J. at 437).

As noted above, the SJA erroneously advised the convening authority of the maximum punishment in Appellant's case and the Defense clemency submission failed to address this error. Therefore, we test for plain error, and we find this error plain and obvious based on the jurisdictional limit of a special court-martial. Despite the plain and obvious error, Appellant has not attempted to make a colorable showing of possible prejudice for this error. The adjudged sentence did not include forfeitures, so there were no forfeitures for the convening authority to act on. Further, the convening authority stated in his declaration that even though the SJAR did not state the maximum imposable sentence included the forfeiture of two-thirds pay per month for twelve months, it would not have changed his decision to deny clemency to Appellant and approve the sentence as adjudged. Under these circumstances, we find no colorable showing of possible prejudice from the misstatement in the maximum punishment in a special court-martial. *See Scalo*, 60 M.J. at 437.

Next, we consider whether Appellant is entitled to new post-trial processing because the addendum to the SJAR did not correct Capt AT's misstatement of the convening authority's power. Generally, the SJA was obligated to correct Appellant's error in the SJAR addendum and the SJA did not do so. *See United States v. Zegarrundo*, 77 M.J. 612 (A.F. Ct. Crim. App. 2018). Whether Appellant was prejudiced by this plain and obvious error requires a court to consider whether the convening authority "plausibly may have taken action more favorable to" the appellant had he or she been provided accurate or more complete information. *United States v. Johnson*, 26 M.J. 686, 689 (A.C.M.R. 1988), *aff'd*, 28 M.J. 452 (C.M.A. 1989); *see also United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). The threshold of some colorable showing of possible prejudice to Appellant is low but still not met in this case. Capt AT's misstatement of the law incorrectly advised the convening authority he had more, rather than less, authority than he actually had. As a result, we find no colorable showing of possible prejudice and we decline to order new post-trial processing. *See United States v. Lamica*, No. ACM 39423, 2019 CCA Lexis 257, at *16, n. 4 (A.F. Ct. Crim. App. 14 Jun. 2019) (unpub. op.); *United States v. Ten Eyck*, No. ACM 39188, 2018 CCA Lexis 193, *6–8 (A.F. Ct. Crim. App. 17 Apr. 2018) (unpub. op.).

### III. CONCLUSION

The approved findings and sentence are correct in fact and law, and no error materially prejudicial to the substantial rights of Appellant occurred. Arti-

cles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are affirmed.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court